RECEIVED
CIRCUIT COURT FOR
BALTIMORE CITY

14 JUL 14 AM 11: 21

JIMMY MULLINS       *   IN THE

4502 Mannasota Avenue

Baltimore MD 21206,      *   CIRCUIT COURT

*CIVIL DIVISION*

      *Plaintiff*       *   OF

v.                 *   MARYLAND

MAYOR AND CITY COUNCIL   *   FOR

   OF BALTIMORE

City Hall               *   BALTIMORE CITY

100 North Holliday Street

Baltimore, MD 21202     *   Case No.: _____

      *Defendant*      *

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

Case: 24-C-14-004196
CV File New
Appear Fee      $40.00
             $20.00
FILED         $55.00
TOTAL       $155.00

COMMENT:
JIMMY MULLINS VS
MAYOR AND CITY COUNCIL
07017316
Cashier: DB CCBCX62
07/14/14 7:02am

## COMPLAINT AND DEMAND FOR JURY TRIAL

Jimmy Mullins, Plaintiff, by John B. Stolarz, his attorney, sues the Mayor and City Council of Baltimore, Defendant, and says:

1. The Plaintiff, Jimmy Mullins became employed by the Defendant, Mayor and City Council of Baltimore on, or about April 28, 1998, as an Auto Body and Fender Repairman.

2. On March 24, 2000 Client stepped into a hole in the floor at Defendant's place of employment injuring his right knee. Plaintiff filed a Claim with the Maryland Workers Compensation Commission.

3. The injury to the right knee became progressively worse resulting in right knee surgery on March 30, 2008.

4. After the surgery, the Plaintiff was released to work but with restrictions on climbing ladders.

5. Prior to, and after returning to work after the surgery on August 11, 2008, the Plaintiff was averaging eight (8) hours of overtime per week. Plaintiff's union seniority guaranteed him priority in obtaining this overtime.

6. On August 22, 2008 Robert Brown, Plaintiff's supervisor, advised the Plaintiff that he could not work overtime because of the restrictions placed upon him by his physicians.

7. Plaintiff requested a copy of documents evidencing such a policy, but Defendant failed to provide them.  Plaintiff eventually learned that Defendant claimed that the collective bargaining agreement, in place at the time, prohibited overtime hours by employees with medical restrictions.

8.  Plaintiff continued to request over time, but his requests were denied.

9. On, or about, January 20, 2009 the Plaintiff met with Defendant's Labor Commissioner and other management officials, to discuss his request for overtime. After the meeting Defendant continued to deny overtime work to the Plaintiff.

10. Plaintiff presented his request for overtime to Regina Grande-Brown and Dorothy Bryant and another person at a  meeting on January 20, 2010. At the end of his presentation, Plaintiff was advised to return to work while they discussed his request. Plaintiff was not advised of the results of the meeting and assumed that his request for overtime was denied because his request for overtime work continued to be denied.

11. On April 6, 2010, Defendant scheduled the Plaintiff for a Fit for Duty Evaluation for April 12, 2010.  Plaintiff had already passed one such evaluation by Defendant's physicians.  Plaintiff was never furnished with the results of this second evaluation.

12.  On April 28, 2010, Regina Grande-Brown sent the Plaintiff a certified letter which stated that the medical evaluation received from the City of Baltimore-Occupational Medical Services at Mercy found that the Plaintiff was unable to perform all of the essential job functions of his position.  The letter further stated that since the City of Baltimore did not provide restricted or light duty assignments on a permanent basis, Plaintiff was no longer qualified to continue in his current job classification.

13. The letter gave the Plaintiff the option, of applying for disability retirement, seek alternative treatment, submit a letter of resignation, or contest the medical determination.

14. Notwithstanding that Plaintiff was never furnished with the results of the evaluation of April 12, 2010, the letter also provided that in order to keep working in his job as an Auto Body Repairman Plaintiff "provide reasonable work site modifications" that allowed him to perform all of the essential functions of his job position, on the condition that the "Department of General Services reserves the right to determine whether these

proposed modifications are reasonable and/or propose alternative modifications.

15. Beyond this April 12, 201 letter, Defendant did not offer any accommodation, and did not offer whether, or what kind, of an accommodation was available.

16. Reaching the conclusion that Defendant did not take Plaintiff's request for overtime work seriously, on, or about April 30, 2010, the Plaintiff filed a Charge of Discrimination with the Equal Employment Opportunity Commission (EEOC).

17. A meeting to discuss Plaintiff's options for alternative employment was scheduled for May 18, 2010, but that meeting did not produce any results.

18. After filing the Charge of Discrimination, the Plaintiff and the EEOC requested the use of a mechanical lift to accommodate his restriction on climbing ladders and proof that the collective bargaining agreement prevented Plaintiff from obtaining overtime hours because of his medical restrictions.

19. The Plaintiff has a disability, within the meaning of the Americans with Disabilities Act, 42 U.S.C. § 12102(1)(A)-(C), as amended, because the medical restriction on climbing ladders, among others, limits his major life activity of working.

20. The EEOC investigated the Plaintiff's claim and on November 21, 2013 issued a Determination which found that the Defendant failed to engage in the interactive process to determine whether Plaintiff's disability could be accommodated, failed to accommodate the Plaintiff's disability by providing a readily available mechanical lift for his use, failed to allow him to work overtime, and otherwise discriminated against him.  The EEOC also concluded that the Defendant falsely asserted that it had no mechanical lifts for Plaintiff's use, and falsely asserted that the collective bargaining agreement prohibited overtime hours to employees with medical restrictions.

21. Defendant's failure to accommodate the Plaintiff's disability and the failure to permit him to work overtime constitutes discrimination in violation of the Americans with Disabilities Act, as amended,  ("ADA"), 42 U.S.C. §§ 12101 *et seq.*

22. As a result of Defendant's violations of the law, the Plaintiff has been caused to suffer a loss of overtime wages which he would have earned,  emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life, and such other nonpecuniary losses by Defendant's denial of overtime and the restriction on using a mechanical lift to enable

him to perform work which required climbing a ladder.

23. The Commission issued its Notice of Right to Sue on April 24, 2014.

Wherefore, Plaintiff requests that the Court enter an order directing Defendant to offer overtime to the Plaintiff on the same basis that it was offered prior to Plaintiff's medical restrictions, direct Defendant to offer the Plaintiff the use of a mechanical lift as an accommodation so that the Plaintiff is able to perform the essential functions of his position, award the Plaintiff overtime wages he has lost on account of Defendant's unlawful curtailment of overtime, award the Plaintiff compensatory damages emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life, and other nonpecuniary losses, and award the Plaintiff reasonable attorney fees, court costs, and for such other and further relief as may be appropriate under the circumstances.

John B. Stolarz
Stolarz Law Firm
6509 York Road
Baltimore, MD 21212
(410) 532-7200
(410) 372-0529 (fax)

Attorney for Plaintiff

## DEMAND FOR JURY TRIAL

The Plaintiff, Jimmy Mullins, by John B. Stolarz, his attorney, demands a jury trial in this case.

John B. Stolarz

Attorney for Plaintiff

W:\5111\Pleadings\ct.wpd