IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

JIMMY MULLINS,                          *

     Plaintiff,                        *

v.                                      *        Case No. TJS-14-2698

MAYOR AND CITY COUNCIL OF               *
BALTIMORE,
                                        *
     Defendant.
                    *     *     *     *     *     *

**MEMORANDUM**

Jimmy Mullins ("Mullins") filed this lawsuit against the Mayor and City Council of Baltimore ("the City") for alleged violations of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101 *et seq*. Mullins claims the City wrongfully excluded him from overtime work because of his disability. He also claims that the City failed to provide a reasonable accommodation for his disability. Presently pending are the parties' cross-motions for summary judgment. (ECF Nos. 34 & 40.) Having considered the submissions of the parties, I find that no hearing is necessary. *See* Loc. R. 105.6. For the reasons stated below, the City's motion will be granted as to Mullins' claims arising before January 1, 2009, but denied in all other respects. Mullins' motion will be denied in its entirety.

## I.  BACKGROUND

Unless otherwise noted, the facts outlined here are not in dispute. Mullins has been employed by the City as an "auto body and fender repairer" since April 1998. (ECF No. 39-1 ¶ 1.) In March 2000, he injured his right knee and has since undergone several surgeries to his knee. (*Id.* ¶¶ 3-5.) After injuring his knee, Mullins has been restricted from climbing ladders and

from lifting over 75 pounds.[1] (*Id.*) On August 22, 2008, Mullins' supervisor, Robert Brown, told him that he could no longer work overtime because of his medical restrictions. (*Id.* ¶ 10.) Brown's instruction was apparently based on a memo from the City to the Fleet Management Division dated November 18, 1997. (ECF Nos. 39-1 at 10-11 & 39-13.) This memo states that employees within the Fleet Management Division may not "work overtime while on restricted duty." (*Id.*) Following his supervisor's instructions, Mullins stopped working overtime as of August 22, 2008, but continued to perform his usual work on a full-time basis during regular hours. (ECF No. 39-1 ¶ 11.) Mullins' supervisors had no complaints about his work. (ECF Nos. 39-9 at 16 & 39-10 at 23.)

On January 20, 2009, Mullins met with the City's Labor Commissioner and other officials employed by the City to request that he be permitted to work overtime, as he had done before August 22, 2008. (ECF No. 39-1 ¶ 12.) On that same day, Mullins met with the City's Human Resource Administrator, Regina Grande-Brown, to repeat his request. (*Id.* ¶ 13.) Mullins explained that, in his view, he had always been able to perform his work during overtime hours without difficulty. (*Id.*) As a result of his request to work overtime, the City directed Mullins to undergo a medical evaluation to determine whether he was fit for duty. (*Id.* ¶ 14.) The examination took place on April 12, 2010. (*Id.* ¶ 14.)

Mullins received a letter dated April 28, 2010 from the City regarding the results of his medical evaluation. (*Id.* ¶ 15.) In the letter, the City informed Mullins that he was "unable to perform all of the essential functions of [his] position." (ECF No. 39-6 at 1.) The letter went on to explain that the City did not "provide restricted or light duty assignments on a permanent basis," and provided Mullins with several options for "resolv[ing] [his] work status." (*Id.*) These

---

[1] Mullins' lifting restriction lasted from August 13, 2008 through April 14, 2009. (*Id.* ¶ 7.)

options included applying for disability or retirement benefits, seeking alternative employment, providing "reasonable worksite modifications," resigning, and contesting the medical determination. (*Id.*) The letter warned Mullins that if he did not respond to the City by May 12, 2010, he would be "recommended for termination." (*Id.* at 2.)

Mullins responded to the letter on May 3, 2010.[2] (ECF No. 39-7.) He stated that, although his preference was for retirement, if retirement was not possible, he would "provide a worksite modification" that would allow him "to perform all essential functions." (*Id.*) Later that month,[3] Mullins requested that he be permitted "to use one of two mechanical lifts, that were available [at his worksite], in order to work on top of dump trucks, when necessary."[4] (ECF No. 39-1 ¶ 26.)

Additional facts will be supplied below.

## II.    ANALYSIS

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) (citing predecessor to current Rule 56(a)). The burden is on the moving party to demonstrate the absence of any genuine dispute of material fact. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970). If sufficient evidence exists for a reasonable jury to render a verdict in favor of the party opposing

---

[2] Before responding to the letter, on April 30, 2010 Mullins filed a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC"). (ECF No. 39-14.) Mullins complained that the City improperly denied his request for a reasonable accommodation. (*Id.*) In its Determination dated November 21, 2013, the EEOC found that the City had "failed to engage in the interactive process to determine if [Mullins'] request to use one of its mechanical lifts [was] a reasonable accommodation." (ECF No. 39-15.)

[3] Presumably, Mullins made this request during the May 14, 2010 meeting referenced in the letter to Mullins from Ms. Grande-Brown dated May 11, 2010 (ECF No. 34-13).

[4] Robert Gibson, the chief of the City's Fleet Management Division, testified at his deposition that Mullins requested the use of a mechanical lift to assist him with his work. (ECF No. 39-10 at 18-20.) At the time that Mullins made this request, there were mechanical lifts available for use at Mullins' worksite. (*Id.* at 21.)

the motion, then a genuine dispute of material fact is presented and summary judgment should be denied. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). However, the "mere existence of a scintilla of evidence in support of the [opposing party's] position" is insufficient to defeat a motion for summary judgment. *Id.* at 252. "When faced with cross-motions for summary judgment, [courts] consider each motion separately on its own merits to determine whether either of the parties deserves judgment as a matter of law." *Bacon v. City of Richmond*, 475 F.3d 633, 636-37 (4th Cir. 2007). "The court must deny both motions if it finds that there is a genuine dispute of material fact, but if there is no genuine issue and one or the other party is entitled to prevail as a matter of law, the court will render judgment." *Sky Angel U.S., LLC v. Discovery Commc'ns., LLC*, 95 F. Supp. 3d 860, 869 (D. Md. 2015) (internal citation and quotation marks omitted). The facts themselves, and the inferences to be drawn from the underlying facts, must be viewed in the light most favorable to the opposing party. *Scott v. Harris*, 550 U.S. 372, 378 (2007); *Iko v. Shreve*, 535 F.3d 225, 230 (4th Cir. 2008). A party may not rest upon the mere allegations or denials of its pleading but instead must, by affidavit or other evidentiary showing, set out specific facts showing a genuine dispute for trial. Fed. R. Civ. P. 56(c)(1). Supporting and opposing affidavits are to be made on personal knowledge, contain such facts as would be admissible in evidence, and show affirmatively the competence of the affiant to testify to the matters stated in the affidavit. Fed. R. Civ. P. 56(c)(4).

A.      **The City's Motion for Summary Judgment**

The City moves for summary judgment as to Mullins' claims for disability discrimination and failure to accommodate under the ADA.

1.        **Disability Discrimination**

"To establish a claim for disability discrimination under the ADA, a plaintiff must prove

'(1) that she has a disability, (2) that she is a 'qualified individual' for the employment in

question, and (3) that [her employer] discharged her (or took other adverse employment action)

because of her disability."[5] *Jacobs v. N.C. Admin. Office of the Courts*, 780 F.3d 562, 572 (4th

Cir. 2015) (quoting *EEOC v. Stowe–Pharr Mills, Inc.,* 216 F.3d 373, 377 (4th Cir. 2000)). The

ADA defines a "disability" as "a physical or mental impairment that substantially limits one or

more major life activities." 42 U.S.C. § 12102(1)(A).

The ADA Amendments Act of 2008 ("ADAAA"), which took effect January 1, 2009,

broadened the definition of "disability." *Jacobs*, 780 F.3d at 572. "In passing the ADAAA,

Congress was concerned lower courts [had] incorrectly found in individual cases that people

with a range of substantially limiting impairments are not people with disabilities," and had

thereby "eliminate[d] protection for many individuals whom Congress intended to protect."

*Reynolds v. Am. Nat. Red Cross*, 701 F.3d 143, 150 (4th Cir. 2012) (internal citation and

quotation marks omitted). Before the enactment of the ADAAA, courts relied upon cases that

demanded that the terms "substantially" and "major," as used in the ADA definition of disability,

"be interpreted strictly to create a demanding standard for qualifying as disabled." *Toyota Motor*

*Manufacturing, Kentucky, Inc. v. Williams*, 534 U.S. 184, 197 (2002). Under that standard, an

individual was considered disabled only if he had an impairment that "prevent[ed] or sever[ely]

---

[5] The parties do not dispute that the denial of overtime work may constitute an adverse employment action. Courts within the Fourth Circuit have generally found that lost overtime opportunities may constitute adverse employment actions. *See Peterson v. Northrop Grumman Sys. Corp.*, No. WMN-13-3812, 2015 WL 6783161, at *5 (D. Md. Nov. 5, 2015); *Johnson v. Baltimore City Police Dep't*, No. ELH-12-2519, 2014 WL 1281602, at *18 (D. Md. Mar. 27, 2014); *Martin v. Merck & Co.*, 446 F. Supp. 2d 615, 635 (W.D. Va. 2006).

restrict[ed] the individual from doing activities that are of central importance to most people's daily lives." *Id.* at 198. Because the ADAAA does not apply retroactively, courts must apply the pre-ADAAA standards of the ADA regarding disability to claims arising before January 1, 2009. *Reynolds*, 701 F.3d at 152.

### a.       Before January 1, 2009

The City argues that Mullins is not disabled under the ADA because he was not substantially limited in his ability to engage in the major life activity of working. (ECF No. 34-1 at 14-15.) While acknowledging that Mullins could not climb ladders, the City argues that this alone "does not rise to the level of a substantial impact" on his ability to work. (*Id.* at 14.) Mullins argues that the cases the City relies on in making this argument predate the ADAAA, and therefore apply a more rigorous standard that does not apply to claims arising after January 1, 2009. (ECF No. 39 at 7.) Mullins fails to explain, however, why reliance on pre-ADAAA cases is inappropriate with respect to his claims before January 1, 2009.[6]

In the pre-ADAAA context, the Fourth Circuit has noted that in order to be substantially limited in the major life activity of working, one must be precluded from working in a broad range of jobs. *Pollard v. High's of Baltimore, Inc.*, 281 F.3d 462, 471 (4th Cir. 2002) (citing *Sutton v. United Air Lines, Inc.*, 527 U.S. 471 (1999)). Applying pre-ADAAA standards, the Fourth Circuit has held that "as a matter of law, . . . a twenty-five pound lifting limitation . . . does not constitute a significant restriction on one's ability to lift, work, or perform any other major life activity." *Williams v. Channel Master Satellite Sys., Inc.*, 101 F.3d 346, 349 (4th Cir. 1996), *abrogated on other grounds by Baird ex rel. Baird v. Rose*, 192 F.3d 462, 470 (4th Cir. 1999). Similarly, other courts have held, in a pre-ADAAA context, that climbing ladders is not a

---

[6] Notably, the City does not draw this distinction either.

major life activity. *See Hockaday v. Brownlee*, 370 F. Supp. 2d 416, 424 (E.D. Va. 2004), *aff'd,* 119 F. App'x 567 (4th Cir. 2005); *Bailey v. Charlotte-Mecklenburg Bd. of Educ.*, No. 98-565-MU, 2001 WL 1019736, at *8 (W.D.N.C. Apr. 3, 2001) (climbing ladders not a major life activity); *Otting v. J.C. Penney Co.*, 223 F.3d 704, 710 (8th Cir. 2000); *see also Piascyk v. City of New Haven*, 64 F. Supp. 2d 19, 26 (D. Conn. 1999), *aff'd,* 216 F.3d 1072 (2d Cir. 2000) (climbing stairs not a major life activity); *Robinson v. Glob. Marine Drilling Co.*, 101 F.3d 35, 37 (5th Cir. 1996) (climbing stairs not a major life activity).

There is no dispute that Mullins has been limited from climbing ladders at all times relevant to this lawsuit. In addition, there is no dispute that Mullins was limited from lifting more than 75 pounds between August 2008 and April 2009. Under the pre-ADAAA version of the ADA, Mullins' lifting and climbing restrictions do not pose a significant enough restriction on any major life activity to constitute a disability. *See, e.g., Hockaday*, 370 F. Supp. 2d at 424. For this reason, Mullins was not disabled before January 1, 2009 under the ADA. Accordingly, even viewing the facts in the light most favorable to Mullins, the City is entitled to judgment as a matter of law on Mullins' claims arising before January 1, 2009. *See generally Wurzel v. Whirlpool Corp.*, 482 F. App'x 1, 10 (6th Cir. 2012) ("Accordingly, with regard to events occurring before January 1, 2009, the ADA applies; with regard to events occurring in and after 2009, the amended version of the ADA—*i.e.,* the ADAAA—applies.").

### b.      After January 1, 2009

Beginning on January 1, 2009, the Court's analysis changes. Once the ADAAA became effective, "the category of individuals who fall within [the] ambit" of the ADA's definition of disability was expanded. *Johnson v. Baltimore City Police Dep't*, No. ELH-12-2519, 2014 WL 1281602, at *14 (D. Md. Mar. 27, 2014). "[T]he ADA, as amended by the ADAAA, requires that

the 'definition of disability in [the ADA] shall be construed in favor of broad coverage,' 42 U.S.C. § 12102(4)(A), and further states, *inter alia,* that '[a]n impairment that substantially limits one major life activity need not limit other major life activities in order to be considered a disability.' *Id.* § 12102(4)(C)." *Johnson*, 2014 WL 1281602, at *14.

> The [ADAAA] was intended to make it "easier for people with disabilities to obtain protection under the ADA." 29 C.F.R. § 1630.1(c)(4). The regulation clarifies that "[t]he primary object of attention in cases brought under the ADA should be whether covered entities have complied with their obligations and whether discrimination has occurred, not whether the individual meets the definition of disability." *Id.* "[T]he question of whether an individual's impairment is a disability under the ADA should not demand extensive analysis." Pub. L. No. 110–325, § 2(b)(5) (2008).

*Jacobs*, 780 F.3d at 572.

In *Harrison-Khatana v. Washington Metro. Area Transit Auth.*, No. DKC-11-3715, 2015 WL 302820, at *9 (D. Md. Jan. 22, 2015), the court considered whether an individual's restriction from climbing bus steps substantially limited the major life activity of working. Viewing the evidence in the light most favorable to the plaintiff, "and construing that evidence in favor of expansive coverage as required by the ADAAA," the court found that the plaintiff raised a genuine dispute of fact on the issue of whether the plaintiff's impairments substantially limited a major life activity. *Id.* In this case, as in *Harrison-Khatana*, a reasonable jury could conclude that Mullins was substantially limited in a major life activity, such as climbing, and was therefore disabled. For this reason, the City fails to show that Mullins was not disabled.

The City also argues that Mullins could not perform all of the essential functions of his job and was therefore not a "qualified individual" under the ADA. (ECF No. 34-1 at 9-12.) The parties do not dispute that Mullins was limited from climbing ladders, but they disagree about whether climbing ladders was an essential function of his job.

A "qualified individual" is someone who "with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires." 42 U.S.C. § 12111(8). "Not all job requirements or functions are essential." *Jacobs*, 780 F.3d at 579. The EEOC's regulations provide a number of ways in which a job requirement might be deemed essential:

> (i) The function may be essential because the reason the position exists is to perform that function;
> (ii) The function may be essential because of the limited number of employees available among whom the performance of that job function can be distributed; and/or
> (iii) The function may be highly specialized so that the incumbent in the position is hired for his or her expertise or ability to perform the particular function.

29 C.F.R. § 1630.2(n)(2).

> To determine whether a job requirement is essential, courts may consider the following:

> (i) The employer's judgment as to which functions are essential;
> (ii) Written job descriptions prepared before advertising or interviewing applicants for the job;
> (iii) The amount of time spent on the job performing the function;
> (iv) The consequences of not requiring the incumbent to perform the function;
> (v) The terms of a collective bargaining agreement;
> (vi) The work experience of past incumbents in the job; and/or
> (vii) The current work experience of incumbents in similar jobs.

29 C.F.R. § 1630.2(n)(3).

In addition, the ADA states that "consideration shall be given to the employer's judgment as to what functions of a job are essential, and if an employer has prepared a written description before advertising or interviewing applicants for the job, this description shall be considered evidence of the essential functions of the job." 42 U.S.C. § 12111(8).

The City contends that climbing ladders was an essential function of Mullins' job. The City attached to its motion a job description summary for Mullins' position as a "body fender repairer." (ECF No. 34-5.) The job description states that the employee would be required to

engage in the physical activity of climbing an average of thirty minutes each day.[7] (*Id.* at 1.) The City argues that "even if climbing ladders . . . does not constitute the major part of the employee['s] day, it may be a necessary condition for the work that follows." (ECF No. 34-1 at 11.) Other than these arguments and its suggestion that its judgment as the employer is entitled to deference,[8] the City provides no evidence to demonstrate that climbing ladders was an essential function of Mullins' job.

Mullins counters that climbing ladders was not an essential function of his job. (ECF No. 39 at 11-13.) He notes that he had been performing his job without climbing ladders since March 14, 2000, and that his "supervisors did not make any complaints about [his] work performance." (ECF No. 39-1 ¶¶ 3-4.) In addition, Mullins states that climbing ladders was required infrequently, about three to eight times per year. (*Id.* ¶ 22.) When it was necessary to climb ladders, Mullins would hold the ladder while another employee climbed it and made the necessary repairs. (*Id.*) During overtime work, however, "[t]here was usually never any need for climbing" because the work then mostly related to police cars, fire trucks, and snow plows, for which "no climbing was involved." (*Id.* ¶¶ 23-24.) Finally, Mullins states that he has been permitted to work overtime, without restriction, since September 9, 2014. (*Id.* ¶ 28.) The fact that Mullins is presently able to work overtime while still being unable to climb ladders is circumstantial evidence that climbing ladders is not an essential function to his position.

---

[7] The job description does not describe the manner of climbing; although the form lists the descriptive items of "stairs, stepladder, straight ladder, tree, utility pole," none of these items are circled. (*Id.*)

[8] The City notes that the "employer's judgment as to the essentiality of a job function is entitled to deference." (ECF No. 34-1 at 10.) Despite citing six cases that support this uncontested assertion, the City provides no evidence to show what its judgment actually was about whether climbing ladders was an essential function of Mullins' job.

Mullins has raised a genuine dispute of fact as to whether climbing ladders was an essential function of his position. While the City points to some evidence that climbing ladders was essential, Mullins has submitted sufficient evidence that would allow a reasonable jury to find that climbing ladders was not essential, and that he was thereby a qualified individual.

Based on the foregoing, at this stage of the proceedings, with the evidence currently provided, there is a genuine dispute of material fact as to whether Mullins was disabled under the ADA. There is also a genuine dispute as to whether he was a qualified individual under the ADA. Thus, the City's motion for summary judgment will be denied as to Mullins' disability discrimination claim for the period of January 1, 2009 to September 9, 2014.

### 2.      Failure to Accommodate

The ADA prohibits employers from refusing to make "reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability who is an applicant or employee . . . ." 42 U.S.C. § 12112(b)(5)(A). Reasonable accommodations may include "making existing facilities used by employees readily accessible to and usable by individuals with disabilities," job restructuring, "acquisition or modification of equipment or devices," and other similar accommodations. *Id.* § 12111(9). The EEOC's regulations state that in making reasonable accommodations, an employer may be required to make "modifications or adjustments to the work environment, or to the manner or circumstances under which the position held or desired is customarily performed" that enable a qualified disabled person to perform the essential functions of the job. 29 C.F.R. § 1630.2(o)(1)(ii).

"To establish a prima facie case against his employer for failure to accommodate under the ADA, the plaintiff must show: (1) that he was an individual who had a disability within the meaning of the statute; (2) that the [employer] had notice of his disability; (3) that with

reasonable accommodation he could perform the essential functions of the position . . .; and (4) that the [employer] refused to make such accommodations." *Wilson v. Dollar Gen. Corp.*, 717 F.3d 337, 345 (4th Cir. 2013) (internal quotation marks omitted). "Although determination of the reasonableness of a proposed modification is often fact-specific, a court may grant summary judgment in favor of a defendant if the plaintiff fails to present evidence from which a jury may infer that the accommodation is reasonable on its face, *i.e.,* ordinarily or in the run of cases, or if the defendant establishes as a matter of law that the proposed modification will cause undue hardship in the particular circumstances." *Halpern v. Wake Forest Univ. Health Scis.*, 669 F.3d 454, 464 (4th Cir. 2012) (internal quotation marks omitted).

The City argues that because Mullins was not an individual with a disability, or in the alternative, was not regarded by the City as having a disability, he cannot establish a prima facie case of failure to accommodate. Mullins' failure to accommodate claim concerns the period of January 20, 2009 (when he met with the City's human resources and management personnel regarding his request for an accommodation) until September 9, 2014 (when he was permitted to resume overtime work).[9] Accordingly, the ADAAA applies. Under the relaxed disability standard of the ADA as amended by the ADAAA, the definition of disability is construed in favor of broad coverage. As explained above, viewing the evidence in the light most favorable to the non-movant, Mullins has raised a genuine dispute regarding whether his climbing restriction substantially limited a major life activity.[10]

---

[9] To the extent that Mullins' failure to accommodate claim concerns conduct that occurred before January 1, 2009, the City is entitled to summary judgment. As explained above, Mullins did not qualify as a disabled individual before the January 1, 2009 effective date of the ADAAA. In addition, Mullins did not make any request for an accommodation until January 20, 2009, after the ADAAA became effective.

[10] The City argues that it did not regard Mullins as disabled. (ECF No. 34-1 at 13.) This is immaterial to the issue at hand. *Harrison-Khatana*, 2015 WL 302820, at *11. Mullins has

The City also argues that Mullins cannot show that it failed to provide a reasonable accommodation for his disability. (ECF No. 34-1 at 16.) The City claims that it "attempted to find a proper way of dealing with Plaintiff's particular needs," and that it did so by allowing him "to remain in his position with restricted duties, not climbing ladders." (*Id.* at 17-18.) The City appears to argue that allowing Mullins to remain employed, rather than terminating him because of his disability, was itself a reasonable accommodation. This argument relies on the City's view that climbing ladders was an essential function of Mullins' position. But as explained above, this issue is in dispute. A reasonable jury might conclude that the City's failure to do anything beyond allowing Mullins to keep was job amounted to a failure to accommodate.

In addition, Mullins points to evidence, which the City does not dispute, that he requested to use one of the mechanical lifts available at his worksite for the occasions when climbing a ladder would otherwise be necessary. (ECF No. 39-1 ¶ 26.) The ADA does not require employers to make a reasonable accommodation to an otherwise qualified individual with a disability if it would impose an undue hardship on the employer. 42 U.S.C. § 12112(b)(5)(a). An undue hardship "means an action requiring significant difficulty or expense" when considered in light of several factors, including the nature and cost of the accommodation, the overall financial resources of the employer, and the number of persons employed by the employer. 42 U.S.C. § 12111(10).

---

provided evidence that he actually had a disability and that the City was aware of the disability. Curiously, Mullins' motion for summary judgment makes a similar argument. Mullins argues that the City's denial of his request for overtime work was prohibited because the City "perceived him as disabled even though he was able to perform the essential functions of his position." (ECF No. 39 at 18.) But the test for determining whether an individual is disabled is not whether he is able to perform the essential functions of their position; it is whether he has an impairment that substantially limits him in a major life activity. *See Mercer v. Drohan Mgmt. Grp., Inc.*, No. 10-1212, 2011 WL 5975234, at *7 (E.D. Va. Nov. 28, 2011). For this reason, Mullins' argument is unavailing.

The City states that Mullins' request was to "purchase a 'man lift,'" which is a characterization that is wholly unsupported by any evidence before the Court. Indeed, this mischaracterization is contradicted by evidence from Mullins' supervisor (ECF No. 39-11 at 19-21), the Chief of the City's Fleet Management Division (ECF No. 39-10 at 19-22), and the EEOC's Determination dated November 21, 2013 (ECF No. 39-15 at 2). In any event, to the extent that the City advances an undue hardship argument, it is unsupported by competent evidence. *See* 29 C.F.R. § 1630.2(p) (outlining the types of evidence to be considered in determining whether a requested accommodation constitutes an undue hardship). *See Reyazuddin v. Montgomery Cty., Maryland*, 789 F.3d 407, 414 (4th Cir. 2015) (noting that "at the summary judgment stage, the employee need only show that an accommodation seems reasonable on its face, and then the employer must show special (typically case-specific) circumstances that demonstrate undue hardship") (internal quotation marks omitted).

The City also contends that, given Mullins' history of workplace injuries, "accommodating him solely for the purpose of allowing him extra pay would have [(1)] subjected him to possible harm during emergency periods," (2) resulted in the City having to bear an "unnecessary expense (purchase of additional equipment)," and (3) burdened "other employees [with] perform[ing] essential functions of his position." (ECF No. 34-1 at 7.) The Court has already found that there is no evidence to support the City's contention that Mullins requested that the City purchase a mechanical lift. The undisputed evidence in the record is that the City was in possession of several mechanical lifts at Mullins' worksite and that Mullins requested to use those lifts. The City has failed to show that this constitutes an undue hardship on the City.

The City argues that no reasonable accommodation could eliminate the direct threat that Mullins poses to the health and safety of himself and others during overtime work. (ECF No. 34-1 at 17.) The City never endeavors to explain this point. An individual who "poses a direct threat to the health or safety of others because of his disability that reasonable accommodation cannot eliminate" may not be a "qualified individual." *Champ v. Baltimore Cty.*, 884 F. Supp. 991, 998 (D. Md. 1995); *see also A Helping Hand, LLC v. Baltimore County, MD*, No. CCB-02-2568, 2006 WL 2067942, at *1 (D. Md. July 14, 2006). A direct threat is "significant risk to the health or safety of others that cannot be eliminated by reasonable accommodation." 42 U.S.C. § 12111(3). The EEOC's regulations provide that an employer must consider several factors in determining whether an individual poses a direct threat:

> (1) The duration of the risk;
> (2) The nature and severity of the potential harm;
> (3) The likelihood that the potential harm will occur; and
> (4) The imminence of the potential harm.

29 C.F.R. § 1630.2(f). These factors must be considered in an individualized manner and on an objective basis. *Class v. Towson Univ.*, 806 F.3d 236, 255 (4th Cir. 2015) (Wynn, J., concurring); *see also Searls v. Johns Hopkins Hosp.*, No. CCB-14-2983, 2016 WL 245229, at *9 (D. Md. Jan. 21, 2016).

Here, the City presents no evidence that it conducted the required individualized assessment of whether Mullins was a direct threat to his own safety or the safety of others, and its submission contains no analysis applying the "direct threat" factors to the evidence in this case. Because the City has failed to carry its burden to establish its affirmative direct threat defense, the City is not entitled to summary judgment. *See Searls*, 2016 WL 24522932, at *8-9.

In addition to his request to use a mechanical lift during overtime work, Mullins also suggests that other employees, including his supervisor, could climb ladders when doing so was

necessary. (ECF No. 39-1 ¶¶ 22-24.) The City argues that this accommodation would present an undue hardship because other employees might not be present during overtime work. (ECF No. 34-1 at 11.) The EEOC's regulations provide that one of the factors to be considered in determining whether an accommodation would impose an undue hardship is "[t]he impact of the accommodation upon the operation of the facility, including the impact on the ability of other employees to perform their duties and the impact on the facility's ability to conduct business." 29 U.S.C. § 1630.2(p)(2)(v). An employer is not required "to force employees, over their express refusal, to permanently switch" their shifts. *Eversley v. MBank Dallas*, 843 F.2d 172, 176 (5th Cir. 1988). Similarly, employers are not required to provide an accommodation to an employee that would violate the seniority rights of other employees obtained through a collective bargaining agreement. *See Kralik v. Durbin*, 130 F.3d 76, 83 (3d Cir. 1997). And an employer is not required to reallocate essential functions of a disabled person's job to other employees, or require other employees to work harder or longer hours. *Shin v. Univ. of Maryland Med. Sys. Corp.*, 369 F. App'x 472, 482 (4th Cir. 2010); *see also Hughes v. B/E Aerospace, Inc.*, NO. 12-717, 2014 WL 906220, at *11 (M.D.N.C. Mar. 7, 2014) (considering the effect of reallocating a disabled employee's work to his coworkers).

The City's argument is not supported by any evidence. The City argues that such an accommodation could "unduly inconvenienc[e]" other employees, including Mullins' supervisor, Robert Brown. (ECF No. 44 at 4-5.) The City states that Mr. Brown's function "was supervisory," and therefore "while watching out for Plaintiff, he [would not be] carrying out his supervisory functions." (*Id.*) There is no evidence to support this argument, and it is contradicted by Mullins' affidavit, which states that during overtime work he and his supervisor (Mr. Brown) performed the same work. (ECF No. 39-1 ¶ 24.) The record is devoid of evidence showing that

allowing other employees to assist Mullins imposed an undue hardship on the City. *See Turner v. Jack Rabbit, Inc.*, 12 F. Supp. 2d 529, 535 (E.D. Va. 1998). Considering the evidence in the light most favorable to Mullins, there is a genuine dispute as to whether Mullins' requests for accommodation were reasonable.

Based on the foregoing, at this stage of the proceedings, with the evidence currently provided, there is a genuine dispute of material fact as to whether the City failed to provide reasonable accommodations to Mullins. Thus, the City's motion for summary judgment will be denied as to Mullins' failure to accommodate claim.

### B.    Mullins' Motion for Summary Judgment

Mullins moves for summary judgment on two grounds. First, he argues that the City's "'100% healed' policy [that] restricted Plaintiff from working any overtime is a per se violation" of the ADA. (ECF No. 40 at 1.) Second, he argues that he is entitled to summary judgment on his failure to accommodate claim. As explained above, the Court finds as a matter of law that Mullins was not disabled before January 1, 2009. After the ADA was amended by the ADAAA, however, there is a genuine dispute as to whether Mullins was disabled. Accordingly, the Court will only consider Mullins' claims that arise after January 1, 2009.

### 1.    100% Healed Policy

Mullins argues that during the period relevant to his lawsuit, the City maintained a "100% healed policy."[11] (ECF Nos. 39 at 18 & 39-13.) The City's policy stated that, effective November 18, 1997, "there will be no Fleet Management Division employees permitted to work overtime while on restricted duty." (ECF No. 39-13.) Such a policy, Mullins argues, is a "per se violation of the ADA." (ECF No. 39 at 18.)

---

[11] Mullins states that the City has since withdrawn this policy. (ECF No. 39 at 18.)

Mullins cites to several cases to support his argument. In *McGregor v. Nat'l R.R. Passenger Corp.*, 187 F.3d 1113, 1116 (9th Cir. 2009), the court discussed "100% healed" policies that require qualified individuals with disabilities to be "fully healed" before returning to work. Such policies, the court stated, discriminate against qualified individuals with disabilities by substituting a requirement that an individual be "'100% healed' from their injury for the required individual assessment whether the qualified individual is able to perform the essential functions of his or her job either with or without accommodation." *Id.* The court went on to affirm the denial of the plaintiff's motion for summary judgment regarding the "100% healed" policy, however, because there was a dispute as to whether the defendant actually had such a policy. *Id.*

In *Steffen v. Donahoe*, 680 F.3d 738, 748 (7th Cir. 2012), the court examined whether a plaintiff could prevail on an ADA claim based on an employer's "100% healed" policy. The court determined that, even assuming that the employer had such a policy regarding disabled workers, the policy would only be a per se violation of the ADA if the employee to whom it was directed was disabled. That is, an employee subjected to a "100% healed" policy would still have to establish the other elements of a discrimination claim under the ADA.

The Fourth Circuit has not addressed whether a 100% healed policy is a per se violation of the ADA. *See Wilburn v. City of Roanoke*, No. 14-0255, 2015 WL 5089242, at *5 (W.D. Va. Aug. 27, 2015). Mullins suggests that the Fourth Circuit has stated in the dicta of an unpublished opinion that a "100% healed policy may constitute an ADA violation where the employee requests an accommodation". (ECF No. 39 at 19 (citing *Derbis v. U.S. Shoe Corp.*, 67 F.3d 294, 1995 WL 573036 (4th Cir. 1995)).) In *Derbis*, however, the issue was that an employee failed to request an accommodation in response to an employer's demand that she return to work with

either a clean bill of health or with an identification of the restrictions that needed accommodation. The Court is unable to locate in the *Derbis* opinion the language that Mullins cites.

At this stage of the proceedings, the Court must consider the evidence in the light most favorable to the non-moving party. Under that standard, and with the evidence before the Court, Mullins' motion for summary judgment as to the "100% healed" policy must be denied. A reasonable jury could conclude that Mullins was not disabled under the ADA. A reasonable jury could also conclude that Mullins was not able to perform the essential functions of his position, such as climbing, with or without an accommodation. Because there is a genuine dispute of material fact, it would be inappropriate to grant Mullins' motion for summary judgment. Alternatively, because Mullins has not demonstrated that the City's "100% healed" policy is a per se violation of the ADA under the law of the Fourth Circuit, he has failed to show that he is entitled to judgment as a matter of law. Mullins' motion for summary judgment on his disability discrimination claim is denied.

### 2. Failure to Accommodate

The necessary elements of a prima case of failure to accommodate are discussed above. Mullins argues that the first and second elements are "not seriously disputed." (ECF No. 39 at 11.) The City, however, does dispute whether Mullins had a disability under the ADA. As explained above, there is a genuine dispute as to whether Mullins was substantially limited in a major life activity. Because a reasonable jury could find for the City on this issue, summary judgment in favor of Mullins is inappropriate.

Mullins also argues that he was able to perform all of the essential functions of his position because climbing ladders was not an essential function. (ECF No. 39 at 13.) If this were

the case, however, there would have been no need for the City to accommodate Mullins; if Mullins was capable of performing all essential functions without accommodation, then no accommodation would have been necessary. Alternatively, if climbing ladders was an essential function of Mullins' job, there is still a genuine dispute as to whether the accommodations suggested by Mullins (using a mechanical lift or the assistance of another employee) are reasonable. For this reason, summary judgment is not appropriate.

Finally, Mullins argues that the City failed to engage in an interactive process to determine whether a reasonable accommodation was available. (ECF No. 39-1 at 15.) Under the ADA, employers have a good-faith duty "to engage in an interactive process to identify a reasonable accommodation." *Wilson*, 717 F.3d at 346. "This duty is triggered when an employee communicates her disability and desire for an accommodation—even if the employee fails to identify a specific, reasonable accommodation." *Jacobs*, 780 F.3d at 581. The interactive process "is not an end in itself; rather it is a means for determining what reasonable accommodations are available to allow a disabled individual to perform the essential job functions of the position sought." *Wilson v. Dollar Gen. Corp.*, 717 F.3d 337, 347 (4th Cir. 2013) (internal quotation marks omitted). "[A]n employee cannot base a reasonable accommodation claim solely on the allegation that the employer failed to engage in an interactive process." *Crabill v. Charlotte Mecklenburg Bd. of Educ.*, 423 F. App'x 314, 323 (4th Cir. 2011) (citing *Rehling v. City of Chicago*, 207 F.3d 1009, 1016 (7th Cir. 2000)). Instead, the employee "must demonstrate that the employer's failure to engage in the interactive process resulted in the failure to identify an appropriate accommodation for the disabled employee." *Id.*

The City's duty to engage in an interactive process to identify an accommodation for Mullins was triggered on January 10, 2009, when Mullins met with the City's management

personnel to request to be permitted to work overtime. (ECF No. 39 at 16.) Rather than engaging

Mullins in a discussion to identify an accommodation that might enable him to perform the

essential functions of his position, the City directed Mullins to undergo a medical evaluation. As

a result of the evaluation, the City determined that Mullins was unable to perform the essential

functions of his position. The City offered Mullins the opportunity to "[p]rovide reasonable

worksite modifications that [would allow him] to perform all the essential functions of [his] . . .

position." (ECF No. 39-6 at 1.) In response, Mullins suggested that he be permitted to use a

mechanical lift that was available at his worksite during overtime work. (ECF No. 39-1 ¶ 26.)

The City denied Mullins' request. (*Id.* ¶ 27.) Neither party has presented any evidence of the

parties' efforts to find a reasonable accommodation after Mullins' request to use a mechanical

lift was denied. Given this lack of evidence, there is a "genuine dispute about whether both

parties met their respective burdens of engaging in the interactive process in good faith, and

whether that caused a failure to accommodate." *Fleetwood v. Harford Sys. Inc.*, 380 F. Supp. 2d

688, 702 (D. Md. 2005).

    The City confidently asserts that it was "well within its rights when it declined to offer

overtime work" to Mullins. (ECF No. 44 at 4.) However, the City was required to engage in the

interactive process to determine whether an accommodation could be fashioned that would allow

Mullins to perform all of the essential functions of his position. *See Pantazes v. Jackson*, 366 F.

Supp. 2d 57, 70 (D.D.C. 2005) (stating that once the interactive process has begun, "both the

employer and the employee have a duty to act in good faith and the absence of good faith,

including unreasonable delays caused by an employer, can serve as evidence of an ADA

violation") (internal citation omitted). There is a genuine dispute about whether the City engaged

in the interactive process in good faith, and whether the City offered Mullins a reasonable

accommodation. Here, a jury could conclude that the City failed to engage in good faith in the interactive process, and that failure led to the failure to accord a reasonable accommodation to Mullins in a timely manner. A jury might also conclude to the contrary and find that the City's proposed accommodation of reassigning Mullins to alternate employment with the City was a reasonable accommodation, and that the proposal was made after a good faith engagement in the interactive process (although the evidence of that is slight). Because there are genuine disputes of material fact regarding whether the City engaged in the interactive process and offered a reasonable accommodation, Mullins' motion for summary judgment must be denied.

## III.    CONCLUSION

In general, genuine disputes remain as to whether (1) Mullins was disabled; (2) Mullins was a qualified individual who could perform the essential functions of his position; (3) the City engaged in the interactive process in good faith; and (4) the City offered Mullins a reasonable accommodation. For these reasons, both motions for summary judgment are denied as they relate to claims arising after January 1, 2009. With respect to Mullins' claims arising before January 1, 2009, the City's motion for summary judgment is granted. A separate Order follows.


August 11, 2016                                             /s/
Date                                            Timothy J. Sullivan
                                                United States Magistrate Judge