IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

JIMMY MULLINS, *

Plaintiff, *

v. * Case No. TJS-14-2698

MAYOR AND CITY COUNCIL OF BALTIMORE, *

*

Defendant.

* * * * * *

**MEMORANDUM**

Plaintiff Jimmy Mullins ("Mullins") has sued the Mayor and City Council of Baltimore ("the City") for violations of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101 *et seq*. Mullins claims that the City wrongfully excluded him from overtime work because of his disability and failed to provide a reasonable accommodation for his disability. On August 11, 2016, the Court denied in large part the cross-motions for summary judgment. (ECF Nos. 51 & 52.) A jury trial is scheduled to begin on March 7, 2017. Now pending before the Court are the parties' motions *in limine*. I find that a hearing is unnecessary. Loc. R. 105.6. The motions are discussed in sequence below.

## I. Mullins' Motion *in Limine* to Exclude Experts Not Previously Identified

Mullins moves to exclude four witnesses ("impeachment witnesses") identified by the City in the parties' proposed pretrial order. (ECF No. 60.) The impeachment witnesses are physicians who "examined Plaintiff and had discussions with him regarding his medical condition and job functions." (ECF No. 73 at 3.) Mullins first argues that the City was required to identify the witnesses under Rule 26(a), but he does not specify which subsection required this. Because the City does not intend to offer any of the witnesses as experts (*see id.* at 1), only

the disclosure provisions of Rule 26(a)(1) and 26(a)(3) are relevant. Although most of the parties' arguments are directed toward the requirements of Rule 26(a)(1), the scheduling order in this case provided that "[t]his is an action in which Fed. R. Civ. P. 26(a)(1) disclosures need not be made." (ECF No. 20.) Accordingly, the City's witnesses cannot be excluded for noncompliance with Rule 26(a)(1). Similarly, Rule 26(a)(3) cannot serve as a basis to exclude the City's witnesses. By identifying its witnesses in the proposed pretrial order, the City complied with the requirements of the rule. (*See* ECF Nos. 55 & 65); *see also* Fed. R. Civ. P. 26(a)(3)(B) ("Unless the court orders otherwise, these disclosures must be made at least 30 days before trial."). There are no grounds under Rule 26(a) to exclude the City's impeachment witnesses.[1]

In his reply, Mullins argues for the first time that the witnesses must also be excluded under Rule 26(b)(1). During discovery, Mullins propounded an interrogatory that asked the City to "[i]dentify each person who has knowledge of any material facts relating to this action and state the subject matter of the information possessed by each person identified." (ECF No. 74 at 2.) Mullins states that the City should have identified the impeachment witnesses in response to this interrogatory. (*Id.*) Presumably because this argument was raised for the first time in Mullins' reply, the City does not explain why it failed to identify the impeachment witnesses in its discovery responses.

The Court will construe Mullins' motion as a motion for sanctions under Rule 37(c). In pertinent part, this rule provides that if a party fails to identify a witness as required by Rule

[1] Having made this finding, the opinion upon which Mullins chiefly relies, *Newsome v. Penske Truck Leasing Corp.*, 437 F. Supp. 2d 431 (D. Md. 2006), is only relevant for the rather unremarkable proposition that Rule 26(b) does not contain an exception for information or witnesses intended "solely for impeachment."

26(e),[2] the party may not call that witness at trial unless their failure was substantially justified or harmless. Having determined that the City failed to identify the impeachment witnesses, I must determine whether any sanction under Rule 37(c)(1) would be appropriate. *See Southern States Rack and Fixture, Inc. v. Sherwin-Williams, Co.*, 318 F.3d 592, 595 (4th Cir. 2003). To determine whether the City's untimely disclosures were substantially justified or harmless, I turn to the factors set forth in *Southern States*.

> [I]n exercising its broad discretion to determine whether a nondisclosure of evidence is substantially justified or harmless for purposes of a Rule 37(c)(1) exclusion analysis, a district court should be guided by the following factors: (1) the surprise to the party against whom the evidence would be offered; (2) the ability of that party to cure the surprise; (3) the extent to which allowing the evidence would disrupt the trial; (4) the importance of the evidence; and (5) the nondisclosing party's explanation for its failure to disclose the evidence.

318 F.3d at 597.

The first factor weighs against Mullins because he cannot be surprised by the existence of the impeachment witnesses. The only personal knowledge the witnesses have relating to this case is derived from their physical examinations of Mullins. Unlike cases where a party is surprised to learn of surveillance footage or a private investigator, Mullins cannot be surprised that these witnesses exist because he was examined by them. The second and third factors also weigh against Mullins. Because the Court will direct the City to produce to Mullins any reports prepared by the impeachment witnesses—if any such reports exist—any surprise that Mullins might suffer will be cured and there will be no disruption at trial. The fourth factor does not

[2] Rule 26(e) requires a party to supplement its discovery responses in a timely manner if the party learns that the response is incomplete or incorrect. Here, the City's impeachment witnesses should have been identified—in response to Mullins' interrogatory—as persons with knowledge of material facts relating of this case. Moreover, after failing to identify the impeachment witnesses, the City should have timely corrected its response as required by Rule 26(e). The City's failure in this regard permits the Court to consider sanctions under Rule 37(c) even though there was no previous order compelling it to produce discovery.

favor either party because if the impeachment witnesses are used, they will only be used for impeachment. It is impossible to determine the importance of impeachment evidence in the abstract. The last factor weighs against the City because it did not explain why it failed to identify the impeachment witnesses in connection with Mullins' interrogatory. But, as noted above, Mullins made this argument for the first time in his reply, so the City's opportunity to respond was somewhat curtailed. Having considered all of these factors, I find that the City's failure to timely identify the impeachment witnesses is harmless. However, in order to ensure that Mullins is not prejudiced, the City will be required to disclose any reports prepared by the impeachment witnesses in connection with their examination of Plaintiff by the close of business on **March 3, 2017**. Mullins' motion (ECF No. 60) is **DENIED**.

## II. Mullins' Second Motion *in Limine* (Corrected)

Mullins moves to preclude the City "from asserting the affirmative defense that Plaintiff posed a direct threat and significant risk to self and others." (ECF No. 63.) A defendant charged with discrimination under the ADA may raise an affirmative defense that the individual with a disability failed to meet the "qualification standards" for the position. 42 U.S.C. § 12113. "Qualification standards" under the ADA "may include a requirement that an individual shall not pose a direct threat to the health or safety of other individuals in the workplace." *Id.*; *see also Chevron U.S.A. Inc. v. Echazabal*, 536 U.S. 73, 78 (2002) (noting that the ADA "creates an affirmative defense for action under a qualification standard"). A "direct threat" is a "significant risk to the health or safety of others than cannot be eliminated by reasonable accommodation." 42 U.S.C. § 12113(3).

Rule 8(c) requires a party to plead any affirmative defense in their answer. However, "even if a party fails to plead an affirmative defense, the opposing party still must show

'prejudice or unfair surprise' before waiver will be enforced." *Crump v. TCoombs & Assocs., LLC*, No. 13-707, 2016 WL 6948670, at *2 (E.D. Va. Feb. 12, 2016) (quoting *RCSH Operations, L.L.C. v. Third Crystal Park Assocs. L.P.*, 115 Fed. Appx. 621, 630 (4th Cir. 2004)); *see also Patten Grading & Paving, Inc. v. Skanska USA Bldg., Inc.*, 380 F.3d 200, 205 n.3 (4th Cir. 2004) ("[I]t is well established that an affirmative defense is not waived absent unfair surprise or prejudice.").

Mullins argues that allowing the City to assert this defense at such a late stage would put him at a disadvantage. Had he known that the City was asserting such a defense, Mullins argues, he would have "explored Defendant's claim during the discovery process." (ECF No. 74 at 3-4.) Mullins claims that the "prejudice is self-evident." (*Id.*) I am not persuaded that there is any prejudice to Mullins. In fact, this very issue was discussed in the Court's opinion on the parties' cross-motions for summary judgment. In pertinent part, that opinion stated:

> The City argues that no reasonable accommodation could eliminate the direct threat that Mullins poses to the health and safety of himself and others during overtime work. (ECF No. 34-1 at 17.) The City never endeavors to explain this point. An individual who "poses a direct threat to the health or safety of others because of his disability that reasonable accommodation cannot eliminate" may not be a "qualified individual." *Champ v. Baltimore Cty.*, 884 F. Supp. 991, 998 (D. Md. 1995); *see also A Helping Hand, LLC v. Baltimore County, MD*, No. CCB-02-2568, 2006 WL 2067942, at *1 (D. Md. July 14, 2006). A direct threat is "significant risk to the health or safety of others that cannot be eliminated by reasonable accommodation." 42 U.S.C. § 12111(3). The EEOC's regulations provide that an employer must consider several factors in determining whether an individual poses a direct threat:
>
> (1) The duration of the risk;
> (2) The nature and severity of the potential harm;
> (3) The likelihood that the potential harm will occur; and
> (4) The imminence of the potential harm.
>
> 29 C.F.R. § 1630.2(f). These factors must be considered in an individualized manner and on an objective basis. *Class v. Towson Univ.*, 806 F.3d 236, 255 (4th Cir. 2015) (Wynn, J., concurring); *see also Searls v. Johns Hopkins Hosp.*, No. CCB-14-2983, 2016 WL 245229, at *9 (D. Md. Jan. 21, 2016).

> Here, the City presents no evidence that it conducted the required individualized assessment of whether Mullins was a direct threat to his own safety or the safety of others, and its submission contains no analysis applying the "direct threat" factors to the evidence in this case. Because the City has failed to carry its burden to establish its affirmative direct threat defense, the City is not entitled to summary judgment. *See Searls*, 2016 WL 24522932, at *8-9.

(ECF No. 51 at 15.)

The City argues that although it did not plead "direct threat" as an affirmative defense, evidence of its investigation of whether Mullins posed a direct threat is relevant to the City's consideration of whether any reasonable accommodation could eliminate or reduce the threat that Mullins posed. (ECF No. 73 at 4.) As I previously noted in the summary judgment opinion, the City's evidence in this regard is lacking. But the City must be given an opportunity to attempt to explain the interactive process it claims to have engaged in, and the challenged "direct threat" evidence is part of this. Mullins has not shown that he is the victim of unfair surprise or prejudice.[3] Mullins' motion (ECF No. 63) is **DENIED**.

## III. Mullins' Objections to Defendant's Exhibits

Mullins objects to several exhibits that Defendant may attempt to introduce into evidence at trial. (ECF No. 62.) The objections Mullins included in his notice will be preserved for trial, but his notice does not provide enough information for the Court to make a ruling. Mullins'

[3] Mullins also moves to preclude the City from offering evidence or argument relating to his failure to mitigate damages. Mitigation of damages is also an affirmative defense. It is not clear how the City might attempt to prove that Mullins failed to mitigate his damages. Mullins' damages arise from his inability to work overtime at his job. If the City's argument will be that he should have sought another job, I will be inclined to exclude such a defense. Given that this issue is raised in a motion *in limine*, I may revise this ruling when the evidence is actually offered at trial. This ruling is preliminary and to assist counsel in preparation for trial. Counsel may renew any objections related to this issue at trial. *See, e.g. Price v. Grasonville Volunteer Fire Dep't*, No. ELH-14-1989, 2016 WL 6277666, at *1 (D. Md. Oct. 26, 2016).

notice of objections to the City's exhibits (*id.*) is thereby **DENIED WITHOUT PREJUDICE**. He may renew these objections with more specificity during trial.

## IV. The City's Omnibus Motion *in Limine*

### A. Subsequent Remedial Measures

The City moves to exclude evidence and testimony related to its abolishment of the overtime restriction for employees on light duty. (ECF Nos. 66-1 at 7 & 80 at 4-5.) The City argues that this evidence is inadmissible under Rule 407. This rule provides:

> When measures are taken that would have made an earlier injury or harm less likely to occur, evidence of the subsequent measures is not admissible to prove: negligence; culpable conduct; a defect in a product or its design; or a need for a warning or instruction. But the court may admit this evidence for another purpose, such as impeachment or — if disputed — proving ownership, control, or the feasibility of precautionary measures.

Fed. R. Evid. 407.

The City argues that the policy that restricted Mullins from working overtime while on light duty was "created in 1997, when ADA was still in its relative infancy." (ECF No. 80 at 5.) The City abolished this policy because it "adversely impacted employees suffering with medical conditions from engaging in overtime work." (*Id.*) According to the City's argument, if the jury is permitted to consider evidence of this policy change, it may construe the evidence as tantamount to an admission that the City engaged in disability discrimination against Mullins.

Mullins argues that the evidence of the City's abolition of its overtime restriction policy is not inadmissible because of Rule 407. (ECF No. 75 at 4.) Rule 407 permits evidence of subsequent remedial measures so long as the evidence is admitted for a purpose other than proving the City's culpable conduct. Here, Mullins argues that the evidence is admissible to show the feasibility of allowing him to work overtime while on light duty. That the City has allowed Mullins to work overtime since September 2014 is evidence that he can perform the

essential functions of his position, that climbing ladders is not an essential function, and that he does not pose a direct threat to the safety of his coworkers. (*Id.*)

The Court is inclined to admit evidence that Mullins was permitted to work overtime while on light duty beginning in September 2014. This evidence is relevant to issues that the City has placed in dispute: whether climbing is an essential function of Mullins' position, whether he can fulfill all essential functions, and whether he poses a direct threat to the safety of his coworkers. The Court is not, however, inclined to admit evidence or argument regarding the actual change in the City's policy that allowed Mullins to resume overtime work. I find that evidence of a change in policy in general could cause undue prejudice to the City. This risk is not the same for evidence that relates solely to Mullins. While evidence of an overall change in policy may suggest to the jury that the City believed its own policy was discriminatory, evidence of a change relating only to one individual does not make this suggestion in a way that would cause undue prejudice. For example, a change in an individual's working conditions might be due to a change of the job requirements or an improvement in the individual's functional abilities. So long as the City has placed in dispute the "feasibility" of permitting Plaintiff to work overtime while on light duty, this evidence is not inadmissible under Rule 407. The City's motion is **GRANTED IN PART** and **DENIED IN PART** as to the subsequent remedial measures evidence.

**B. Options Letter**

The City moves for the Court to order the redaction of the April 28, 2010 letter (ECF No. 66-8) from the City to Mullins. (ECF No. 66-1 at 7-8.) The letter informed Mullins that because he was unable to perform all of the essential functions of his position, and because the City did not provide light duty assignments on a permanent basis, he had several options. (*Id.* at 7.) The

options included: applying for disability or retirement benefits; seeking alternative employment; requesting reasonable worksite modifications; resigning; and contesting the medical determination. (ECF No. 66-8.) The letter concluded with advice that a failure to respond would result in a recommendation that he be terminated. (*Id.* at 2.) Mullins ultimately selected the option to pursue reasonable worksite modifications.

The City argues that the fact that the letter contained multiple options (including resignation) is irrelevant. The City also argues that the probative value of the other options is substantially outweighed by the dangers listed in Rule 403. For example, a jury might interpret the City's position in the letter to mean that it was attempting to terminate Mullins' employment because he was disabled. In fact, the letter was one that the City was obligated to send to employees determined to be unfit for duty under a negotiated agreement between the City and Mullins' union (*see* ECF No. 66-9). The City suggests that the introduction of the letter without redaction will confuse the jury and waste time because the City will be required to explain the intricacies of a diversion agreement with Mullins' union.

Mullins argues that the letter is admissible without redaction. (ECF No. 75 at 4-7.) He asserts that the letter is proof that the City did not intend to accommodate him or even engage in the interactive process to consider proposed accommodations. (*Id.*) And as to any prejudice to the City, Mullins submits that it can easily explain why the letter was sent. (*Id.*)

I find that this letter is admissible without redaction. It is relevant to show how the City responded when it determined that Mullins was unable to perform all of the essential functions of his position. Redacting two-thirds of the letter would likely cause more confusion than it would avert. The City's explanation is straightforward: the advice contained in the letter was required by an agreement with Mullins' union. The Court will permit the City to explain this fact to the

jury. And the Court will not permit Mullins to probe too substantively or deeply into the alternative options contained in the letter. The letter is, at best, only slightly probative to the issue of the City's alleged failure to accommodate Mullins. Because the Court will not permit Mullins to spend an undue amount of time focused on the alternative options contained in the letter, the City will not be required to provide a lengthy explanation about the diversion agreement. The City's motion is **DENIED** as to the options letter.

### C. Equal Employment Opportunity Commission Evidence

The City moves to exclude several pieces of evidence related to the Equal Employment Opportunity Commission's ("EEOC") investigation of Mullins' charge of discrimination. In general, the Court will exclude all of the documents related to the EEOC investigation.

As to Mullins' EEOC Charge of Discrimination dated April 30, 2010 (ECF No. 66-2), the evidence will be excluded because its probative value is substantially outweighed by the dangers listed in Rule 403. Introduction of the document will likely confuse the jury and waste time.

The EEOC Determination (ECF No. 66-5) will also be excluded because there is a substantial risk that it would be given undue weight by the jury and thereby usurp the jury's functions. Although Rule 803 excludes from the hearsay rule "factual findings from a legally authorized investigation," other judges have considered the unique problems posed by a jury's consideration of an EEOC determination. *Price*, 2016 WL 6277666, at *4-5. An EEOC determination "comes with the imprimatur of government approval" and may be given undue weight by a jury, especially if the jury assumes that the EEOC has expertise in matters of disability discrimination. *Id.* In many cases—and this is such a case—the EEOC's findings are of "questionable probative value and . . . likely to be prejudicial." *Id.* The jury's decision in this case will be based on the witnesses' testimony at trial; it will not be based on the conclusions

reached by the EEOC. The right to sue letter dated April 24, 2014 (ECF No. 66-7) will be excluded for the same reasons.

The EEOC position statement (ECF No. 66-3) from the City will be excluded because it is minimally probative of any issue in dispute. Plaintiff argues that the statement is evidence of the City's shifting explanations for its conduct, but the City's motives are not relevant in this case as an employer's motives would be relevant in a case involving pretext. Here, there is no question that the City's decision to exclude Plaintiff from overtime work was based on his disability (as opposed to a reason other than his disability). The only question is whether the City's actions were permissible under the ADA. The Court will reserve on the question of whether this document might be admissible for impeachment purposes.

Finally, documents evincing the City's settlement or conciliation efforts with the EEOC (ECF Nos. 66-4 & 66-6) are inadmissible under both 42 U.S.C. § 2000e-5(b) ("[n]othing said or done during and as a part of such informal endeavors may be made public by the Commission, its officers or employees, or used as evidence in a subsequent proceeding without the written consent of the persons concerned") and Rule 408 (providing that "conduct or a statement made during compromise negotiations about the claim . . . is not admissible . . . either to prove or disprove the validity or amount of a disputed claim or to impeach by a prior inconsistent statement or a contradiction"). Defendant's motion is **GRANTED** as to the EEOC evidence.

## IV. Summary

In summary, the Court's rulings on the motions *in limine* are as follows:

1. Mullins' Motion *in Limine* to Exclude Experts Not Previously Identified (ECF No. 60) is **DENIED**. The City must produce any reports prepared by these witnesses to Mullins by the close of business on March 3, 2017.

2. Mullins' Objections to Defendant's Exhibits (ECF No. 62) is **DENIED WITHOUT PREJUDICE**. Mullins preserves these objections for trial, but must renew them at the appropriate time.

3. Mullins' Second Motion *in Limine* (Corrected) (ECF No. 63) is **DENIED**.

4. The City's Omnibus Motion *in Limine* (ECF No. 66) is **GRANTED IN PART** and **DENIED IN PART**. The motion is granted in part and denied in part as to the evidence of the City's subsequent remedial measures. It is denied as to the options letter. It is granted as to the EEOC evidence.

An Order follows.

March 1, 2017
Date

/s/
Timothy J. Sullivan
United States Magistrate Judge